IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

JONTI-CRAFT, INC,

Plaintiff,

v.

ABC SCHOOL SUPPLY, INC.,

Defendant.

Case No. 01-CV-2353 RHK/JMM

**[~~PROPOSED~~] STIPULATED ORDER OF DISMISSAL**

The Court has reviewed the Stipulated Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii) executed by counsel for the parties, and the terms and conditions of the Settlement Agreement attached to this Order as Exhibit I and incorporated herein as if fully set forth in it.

Therefore, IT IS ORDERED that:

1. This matter is dismissed with prejudice;

2. The dismissal is expressly conditioned on the terms and conditions of the Settlement Agreement attached and incorporated in this Order;

3. The Court retains jurisdiction of this matter for the purposes of taking any action needed to enforce the terms of the attached Settlement Agreement, which is a part of this Order; and

4. Each party is to bear its own costs, as provided in the Settlement Agreement.

Dated: 12/26/02

Richard H. Kyle, Judge
United States District Court

816661.1

DEC 26 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

# SETTLEMENT AGREEMENT

**THIS AGREEMENT** is entered into between Jonti-Craft, Inc., a Minnesota corporation having its principal place of business located at 171 Highway 68, Wabasso, Minnesota ("Jonti-Craft") and Childcraft Education Corporation, a New York corporation having its principal place of business located at 2920 Old Tree Drive, Lancaster, PA 17603, successor in interest to ABC School Supply, Inc. (collectively "ABC"), (each sometimes referred to as a "Party," and collectively as the "Parties"), as follows:

**WHEREAS**, ABC is the owner of United States Design Patent Nos.: D423,171 for "Rolling Bin"; D437,706 for "Bin and Bay Shelving and Storage Unit"; and D423,254 for "Art Table", and United States Utility Patent No. 6,363,865 for "Art Table" (collectively "ABC Patents").

**WHEREAS**, Jonti-Craft has made, used, sold, and offered for sale in the United States certain products that ABC alleges infringes one or more of the ABC Patents. Among these certain products are "Accused Products," as set forth in Exhibit A;

**WHEREAS**, Jonti-Craft has filed an action in the United States District Court for the District of Minnesota, Case No. 01-CV-2353 seeking a declaratory judgment of non-infringement of the ABC Patents by the Accused Products and a declaratory judgment of invalidity of the ABC Patents (the "Action"). Pursuant to agreement by the Parties in view of settlement negotiations, ABC has not yet filed a response in the Action; and

**WHEREAS**, the Parties desire to settle the Action and resolve any dispute over Jonti-Craft's alleged infringement of the ABC Patents.

**NOW, THEREFORE**, in consideration of the recitals set forth above and the promises and covenants contained in this Agreement, the Parties agree to the following terms as a compromise settlement of disputed claims. Agreement to the following terms does not constitute an admission by either party as to liability or an admission as to the correctness of the facts alleged by, or legal positions, taken by either Party:

## 1. COVENANTS

1.1 Jonti-Craft hereby agrees and covenants to modify the Accused Products by making the changes in the Accused Products as identified in Exhibit B (the "Modified Products").

1.2 Immediately on the Effective Date, Jonti-Craft shall cease and desist all manufacture of the Accused Products, and shall have until April 1, 2003, to sell, use, or otherwise dispose of all remaining inventory of the Accused Products that currently exist as of the Effective Date. Jonti-Craft shall remove any and all advertising of the Accused Products in the next printing of its catalog, having an effective date of January 1, 2004, or later. Jonti-Craft does not have to recall its 2002 catalog. Any other advertising and promotions under the direction and control of Jonti-Craft with regard to the Accused Products shall be changed as soon as practicable, but in any event, not more than sixty (60) days following the Effective Date, to remove or fully conceal Accused Products and to reflect the Modified Products.

1.3 The Parties shall, through their counsel and contemporaneously with or before the Effective Date, execute the Stipulated Dismissal attached as Exhibit C to this Agreement. The Stipulated Dismissal along with the Proposed Stipulated Order of Dismissal, attached as Exhibit D to this Agreement, along with a copy of this Settlement Agreement and Exhibits A and B hereof, shall be filed with the court only after the Effective Date. If the court refuses to enter the Stipulated Dismissal and/or the Proposed Stipulated Order of Dismissal, the Parties and their counsel shall cooperate to prepare, execute and lodge a Stipulated Dismissal and/or Proposed Stipulated Order of Dismissal in a form acceptable to the court.

**2. MUTUAL COVENANTS NOT TO SUE**

2.1 ABC hereby expressly covenants and agrees not to sue Jonti-Craft for any claims relating to the alleged infringement of the ABC Patents by Accused Products that Jonti-Craft has, prior to the Effective Date of this Agreement or in accordance with paragraph 1.2 hereof, made, used, sold, offered for sale, or imported into the United States. Further, ABC hereby covenants not to sue Jonti-Craft for any Modified Products that Jonti-Craft makes, uses, sells, offers for sale, or imports into the United States.

2.2 The Parties hereby and forever mutually covenant not to sue one another and each of the other's subsidiaries, affiliates, employees, officers, directors, general partners, limited partners, shareholders, predecessors, successors, dealers, agents, attorneys, insurers, representatives, and all persons or entities in active concert and participation with them, for any and all claims of every kind and character, arising from or related to the manufacture, use, sale, offer for sale, or importation into the United States of the Accused Products (manufactured before the Effective Date of this Agreement) or Modified Products or to any other activities or actions related to this Action and predating this Agreement, whether directly or indirectly and whether known or unknown, excluding and excepting actions to enforce this Agreement.

2.3 It is the intention of the Parties in executing this Agreement that this Agreement shall be effective as a bar as to each and every claim of every kind and character that ABC or Jonti-Craft has or may have against the other arising from or related to the activities described in paragraph 2.2 or to claims raised in this Action. In furtherance of this intention, the Parties expressly waive any and all claims of every kind and character that may have been brought in this Action as a result of any activities by either Party arising from or related to this Action and predating this Agreement. The Parties expressly consent that this Agreement shall be given full force and effect according to each and all of its express terms and conditions, including those relating to unknown and unsuspected claims, if any.

2.4 However, notwithstanding any of the foregoing, (i) ABC expressly reserves its right to enforce the ABC Patents against Jonti-Craft with respect to any products made, used, sold, offered for sale or imported into the United States after the Effective Date of this Agreement, other than (a) Accused Products treated in accordance with paragraph 1.2 hereof and (b) the Modified Products as disclosed in Exhibit B or products that are substantially equivalent to the identified "SEE-n-WHEEL", "SEE-n-WHEEL SHELF" and "CREATIVE CADDIE" products (see Exhibit A) and which are modified in conformance with the Approved Modifications of Exhibit B, , and (ii) Jonti-Craft expressly reserves the right to challenge the validity of any of the ABC Patents in the event ABC asserts infringement against Jonti-Craft for its manufacture, use, sale, or offer for sale of any products not identified in Exhibits A or B.

2.5 The Parties acknowledge that they understand the significance and potential consequences of their waiver of unknown claims and of the specific waiver of their rights under the law, but nothing in this Section 2 is intended to waive any claims arising from breach of this Agreement.

## 3. REPRESENTATIONS AND WARRANTIES

3.1 Jonti-Craft hereby represents and warrants that it has not assigned or transferred, or purported to assign or transfer, to any person or entity any claim or cause of action waived under this Agreement, and further agrees to indemnify ABC against any liability, loss, damage, cost or expense, including reasonable attorney's fees arising out of any breach of this representation and warranty.

3.2 ABC hereby represents and warrants that it has not assigned or transferred, or purported to assign or transfer, to any person or entity any claim or cause of action waived under this Agreement, and further agrees to indemnify Jonti-Craft against any liability, loss, damage, cost or expense, including reasonable attorney's fees arising out of any breach of this representation and warranty.

## 4. COSTS AND FEES

The Parties agree to bear their own costs and attorneys fees for all matters related to the dispute between the Parties, the Action, and to the negotiation and consummation of this Agreement. The Parties acknowledge that in the event of breach of any term of this Agreement, such a breach would cause irreparable harm and significant injury to the non-breaching party which would be difficult to ascertain and/or measure. Accordingly, the Parties covenant and agree that in the event of breach of any term of this Agreement, the non-breaching party shall have the right to enforce the terms of this Agreement by injunction, specific performance or other equitable relief against the breaching party and that the non-breaching party shall have the right to recover against the breaching party any damages as deemed just by a court of competent jurisdiction.

## 5. GENERAL PROVISIONS

5.1 Binding Effect. Each of the Parties hereto understands and expressly agrees that this Agreement shall bind and benefit their parents, successors, affiliates, subsidiaries, partners and customers and any present or future officers, directors, owners, shareholders, agents, attorneys, representatives, insurers, and underwriters, as applicable. In furtherance of the same, it is understood that the covenants herein shall be assignable or otherwise transferable, without consent, to any successors, affiliates, subsidiaries or any purchasers of all or substantially all of the stock or assets related to the business to which this agreement pertains, as long as all obligations are also assumed.

5.2 No Other Rights or Obligations. Nothing in this Agreement shall be construed as conferring on a Party by implication, estoppel or otherwise any license or other right under any other patents or other intellectual property of the other Party hereto or to use in advertising or publicity any trademark, servicemark, name or trade name of the other Party hereto. Furthermore, nothing in this Agreement shall be construed as an obligation on either of the

Parties to furnish any manufacturing or technical information concerning its products to the other Party hereto.

5.3 Governing Law And Forum. The Parties agree that this Agreement shall be construed, interpreted, governed, and applied in accordance with the laws of the State of Minnesota, without regard to its rules with respect to conflicts of laws.

5.4 Authority. Each party represents that all corporate action necessary for the authorization, execution and delivery of this Agreement by such party and the performance of its obligations hereunder has been taken. Each person whose signature appears hereon warrants and guarantees that he or she has been duly authorized and has full authority to execute this Agreement on behalf of the entity on whose belief this Agreement is executed.

5.5 Partial Invalidity. If any provision of this Agreement shall be found or be held to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable and the Parties shall negotiate, in good faith, a substitute, valid and enforceable provision which most nearly effects their intent in entering into this Agreement.

5.6 Counterparts. This Agreement may be executed in counterparts, which, taken together, shall be regarded as one and the same instrument. True and correct copies of signed counterparts may be used in place of the originals for any purpose.

5.7 Modification. No alteration, amendment, waiver, cancellation or any other change in any term or condition of this Agreement shall be valid or binding on either party unless the same shall have been mutually assented to in writing by both Parties.

5.8 Waiver. The failure of any party to enforce at any time the provisions of this Agreement, or the failure to require at any time performance by any other party of any of the provisions of this Agreement, shall in no way constitute a present or future waiver of such provisions, nor in any way affect the ability of any party to enforce each and every such provision thereafter. No waiver shall be binding unless in writing and signed by the party waiving the breach.

5.9 Independent Legal Advice. The Parties acknowledge that they have been advised or had the opportunity to be advised by their own independently selected counsel and other advisors in connection with this Agreement and enter into this Agreement solely on the basis of that advice and on the basis of their own independent investigation of all of the facts, laws and circumstances material to this Agreement or any provision thereof, and not in any manner or to any degree based upon any statement or omission by the other party and/or its counsel.

5.10 Construction. Each party has cooperated in the drafting and preparation of this Agreement. Hence, this Agreement shall not be construed against any party on the basis that that party was the drafter. The headings are for the convenience of the parties and are not to be used in construing the meaning of any provision of this Agreement.

5.11 Entire Agreement. This Agreement constitutes and contains the final, complete and exclusive agreement and understanding between the Parties. This Agreement supersedes and replaces all prior negotiations and all agreements, proposed or otherwise, whether written or oral, concerning the subject matter hereof. This is a fully integrated document.

BY EXECUTING THIS AGREEMENT, EACH OF THE PARTIES ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT AND UNDERSTANDS ITS TERMS AND PROVISIONS. This Agreement shall become effective on the last date it has been executed by both parties ("the Effective Date").

| JONTI-CRAFT, INC. | CHILDCRAFT EDUCATION CORPORATION, successor in interest to ABC School Supply, Inc. |
|---|---|
| By: Donald F. Schwarz | By: ____________ |
| Name: DONALD F. SCHWARZ | Name: ____________ |
| Title: Pres. | Title: ____________ |
| Date: 12-18-2002 | Date: ____________ |

Acknowledgements

STATE OF MINNESOTA )
) ss.:
COUNTY OF REDWOOD )

On this 18th day of December, 2002, before me came Donald F. Schwarz, who acknowledged to me that he/she is the President of Jonti-Craft, Inc., and that he/she executed the foregoing instrument on behalf of Jonti-Craft, Inc. with full authority to do so.

JOANNE K. CHRISTENSEN
NOTARY PUBLIC-MINNESOTA
MY COMMISSION EXPIRES 1-31-2005

Joanne K. Christensen
Notary Public
Commission Expires: 1-31-2005

STATE OF ____________ )
) ss.:
COUNTY OF ____________ )

On this ____________ day of ____________, 2002, before me came ____________, who acknowledged to me that he/she is the ____________ of Childcraft Education Corporation, successor in interest to ABC School Supply, Inc., and that he/she executed the foregoing instrument on behalf of Childcraft Education Corporation with full authority to do so.

____________
Notary Public
Commission Expires: ____________

BY EXECUTING THIS AGREEMENT, EACH OF THE PARTIES ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT AND UNDERSTANDS ITS TERMS AND PROVISIONS. This Agreement shall become effective on the last date it has been executed by both parties ("the Effective Date").

| JONTI-CRAFT, INC. | CHILDCRAFT EDUCATION CORPORATION, successor in interest to ABC School Supply, Inc. |
|---|---|
| By: ____________________ | By: [signature] |
| Name: ____________________ | Name: Ronald Suchodolski |
| Title: ____________________ | Title: President |
| Date: ____________________ | Date: 12-18-02 |

Acknowledgements

STATE OF ____________)
) ss.:
COUNTY OF ____________)

On this ______________ day of______________, 2002, before me came ____________, who acknowledged to me that he/she is the ______________ of Jonti-Craft, Inc., and that he/she executed the foregoing instrument on behalf of Jonti-Craft, Inc. with full authority to do so.

______________________
Notary Public
Commission Expires: __________

STATE OF PA)
) ss.:
COUNTY OF Lancaster)

On this 18th day of December, 2002, before me came Ronald Suchodolski, who acknowledged to me that he/she is the President of Childcraft Education Corporation, successor in interest to ABC School Supply, Inc., and that he/she executed the foregoing instrument on behalf of Childcraft Education Corporation with full authority to do so.

[signature: Karen R. Parker]
Notary Public
Commission Expires: Oct 2 2006

Notarial Seal
Karen R. Parker, Notary Public
East Hempfield Twp., Lancaster County
My Commission Expires Oct. 2, 2006

# EXHIBIT A

## JONTI-CRAFT'S ACCUSED PRODUCTS

| Product Name | Product Number | Description |
|---|---|---|
| SEE-n-WHEEL | 3924JC | 12 1/2" wide x 14 1/2" deep x 12 1/2" high rectangular storage bin on castors having rectangular acrylic window and notched hand grip in top edge of bin (Exhibit A-1) |
| SEE-n-WHEEL SHELF | 3925JC | 48" shelf with 3 over 3 compartments wherein bottom 3 compartments receive 3 See-n-Wheel storage bins (Exhibit A-1) |
| CREATIVE CADDIE - Art | 58400JC | 38" - 58 lbs w/ 1 optional tray† (Ex. A-2) |
| CREATIVE CADDIE - Art | 58401JC | 38" - 70 lbs w/ 2 optional trays† (Ex. A-2) |
| CREATIVE CADDIE - Art | 58406JC | 50" - 68 lbs w/ 1 optional tray† (Ex. A-2) |
| CREATIVE CADDIE - Art | 58407JC | 50" - 80 lbs w/ 2 optional trays† (Ex. A-2) |
| CREATIVE CADDIE - Light | 58404JC | 38" - 58 lbs w/ 1 optional tray† (Ex. A-2) |
| CREATIVE CADDIE - Light | 58405JC | 38" - 70 lbs w/ 2 optional trays† (Ex. A-2) |
| CREATIVE CADDIE – Light | 58410JC | 50" - 68 lbs w/ 1 optional tray† (Ex. A-2) |
| CREATIVE CADDIE - Light | 58411JC | 50" - 80 lbs w/ 2 optional trays† (Ex. A-2) |
| CREATIVE CADDIE - Discovery | 58402JC | 38" - 58 lbs w/ 1 optional tray† (Ex. A-2) |
| CREATIVE CADDIE - Discovery | 58403JC | 38" - 70 lbs w/ 2 optional trays† (Ex. A-2) |
| CREATIVE CADDIE – Discovery | 58408JC | 50" - 68 lbs w/ 1 optional tray† (Ex. A-2) |
| CREATIVE CADDIE - Discovery | 58409JC | 50" - 80 lbs w/ 2 optional trays† (Ex. A-2) |

† Optional Tray referred to as "Creative Caddie Bin" (Part No. 58412JC) in Exhibit A-2 is identified as being 6" wide x 27" deep x 6 1/2" high. Note, the base of Optional Tray includes two predrilled holes at each end thereof, such that the Optional Tray is mountable with screws to top of legs at the ends of Creative Caddie, whereby the Optional Tray is fixed to the top of the Creative Caddie legs and extends transversely over the tabletop surface.

# Storage




**SEE-n-WHEEL SHELF** - 3 - Compartments for three See-n-Wheel bins, included, in stationary shelving. **KYDZStrong**™ construction. Baltic Birch back only. 48" wide x 18" deep x 28½" high.

**3925JC** Wt. 136 lbs. .......... **428.75**




**SEE-n-WHEEL** - See what's being stowed and wheel it to the activity. **KYDZStrong**™ bins with an acrylic "window". Caster mounted. 12½" wide x 14½" deep x 12½" high.

**3924JC** Wt. 21 lbs. o/s .......... **65.00**

EXHIBIT

A-1

# Tables




58407JC






58401JC

## CREATIVE CADDIES:

- Adjustable tabletop 21" to 24½" heights
- Two lengths available
- Accommodates a 24" paper roll
- Locking casters
- Bottom tray adjusts from 5½" to 8¼" high
- Optional storage bins
- KYDZTuff™ finish
- KYDZSafe™ edges

**CREATIVE CADDIE** - ART - Mobile, E-Z to clean Write-n-Wipe adjustable tabletop. Easily cover top with paper (not included) for art projects. Store supplies in tray below or in optional bins. Caster mounted. 26" wide x 21" to 24½" high.

| Number | Length | Weight | Price |
|---|---|---|---|
| **58400JC** | 38" | 58 lbs. | **204.25** |
| **58401JC** w/2 bins | 38" | 70 lbs. | **258.25** |
| **58406JC** | 50" | 68 lbs. | **259.25** |
| **58407JC** w/2 bins | 50" | 80 lbs. | **313.25** |

**CREATIVE CADDIE BIN** - This handy add-on bin has KYDZSafe™ edges and KYDZTuff™ finish. Each sold separately. 6" wide x 27" deep x 6½" high.

**58412JC** Wt. 8 lbs. o/s........................**27.00**







58405JC




58402JC

**CREATIVE CADDIE** - LIGHT - Opaque adjustable tabletop provides lighted area for tracing or color experimentation. Reflective panels help distribute light evenly. UL approved electrical components. Additional storage below. Bins optional. Paper roll dowel included. Caster mounted. 26" wide x 21" to 24½" high.

| Number | Length | Weight | Price |
|---|---|---|---|
| **58404JC** | 38" | 58 lbs. | **404.25** |
| **58405JC** w/2 bins | 38" | 70 lbs. | **458.25** |
| **58410JC** | 50" | 68 lbs. | **459.25** |
| **58411JC** w/2 bins | 50" | 80 lbs. | **513.25** |

**CREATIVE CADDIE** - DISCOVERY - Engineered to safely display objects for touchless observation. See-thru acrylic panels on top and bottom, two inches apart. Displayed items are easily replaced from end apron. Adjustable height tabletop. Extra storage below. Optional bins. Paper roll dowel included. Caster mounted. 26" wide x 21" to 24½" high.

| Number | Length | Weight | Price |
|---|---|---|---|
| **58402JC** | 38" | 58 lbs. | **216.75** |
| **58403JC** w/2 bins | 38" | 70 lbs. | **270.75** |
| **58408JC** | 50" | 68 lbs. | **275.50** |
| **58409JC** w/2 bins | 50" | 80 lbs. | **329.50** |

ALL ITEMS F.O.B. FACTORY, SHIPS U.P.S. O/S SHIPS U.P.S. OVERSIZED

EXHIBIT
A-2

Jonti-Craft

# EXHIBIT B

APPROVED MODIFICATIONS TO
JONTI-CRAFT'S ACCUSED PRODUCTS

| Product Name | Product Number | Approved Modifications |
|---|---|---|
| SEE-n-WHEEL | 3924JC | Either: (1) eliminate window; or (2) eliminate castors; or (3) eliminate notched hand grip on top edge of bin and change shape of window to any shape other than quadrilateral and other than substantially quadrilateral, except that diamond shaped windows having two opposing angles less than or equal to 60° each and two opposing angles greater than or equal to 120° each and having one of its two, common, angle bisectors oriented vertically shall be permitted. |
| SEE-n-WHEEL SHELF | 3925JC | No modifications to shelf required, only modify See-n-Wheel storage bins as identified above. |
| CREATIVE CADDIE - Art | 58400JC | (1) eliminate Optional Trays as specifically defined in Exhibit A; and (2) assure that there are no braces or beams which extend above and transversely over the top of the table top surface; and (3) assure that there are no trays or supply holders which are attached to the Creative Caddie and which extend above and transversely over the top of the table top surface. |
| CREATIVE CADDIE - Art | 58401JC | Same as above |
| CREATIVE CADDIE - Art | 58406JC | Same as above |
| CREATIVE CADDIE - Art | 58407JC | Same as above |
| CREATIVE CADDIE - Light | 58404JC | Same as above |
| CREATIVE CADDIE - Light | 58405JC | Same as above |
| CREATIVE CADDIE – Light | 58410JC | Same as above |
| CREATIVE CADDIE - Light | 58411JC | Same as above |
| CREATIVE CADDIE - Discovery | 58402JC | Same as above |
| CREATIVE CADDIE - Discovery | 58403JC | Same as above |
| CREATIVE CADDIE – Discovery | 58408JC | Same as above |
| CREATIVE CADDIE - Discovery | 58409JC | Same as above |

**EXHIBIT C**
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

-----------------------------------

JONTI-CRAFT, INC,

Plaintiff,

v.

ABC SCHOOL SUPPLY, INC.,

Defendant.

Case No. 01-CV-2353 RHK/JMM

**STIPULATED DISMISSAL**
**(Fed. R. Civ. P. 41(a)(1)(ii))**

The parties, through the signatures of their counsel on this Stipulation, stipulate to dismiss the above-captioned action with prejudice according to the terms of the settlement agreement attached to the Proposed Stipulated Order and incorporated by reference in that Order made fully a part of it.

For the Plaintiff, JONTI-CRAFT INC.:

Dated: ____________

______________________________
Jon S. Swierzewski (108017)
Genevieve A. Beck (278208)
LARKIN, HOFFMAN, DALY & LINDGREN, LTD.
1500 Wells Fargo Plaza, 7900 Xerxes Avenue South
Bloomington, Minnesota 55431-1194
Telephone (952) 835-3800
Facsimile (952) 896-3333

For the Defendant, CHILDCRAFT EDUCATION CORPORATION,
successor in interest to ABC SCHOOL SUPPLY, INC.:

Dated: ____________

______________________________
Louis T. Isaf, Esq.
D. Scott Sudderth, Esq.
WOMBLE, CARLYLE, SANDRIDGE & RICE
One Atlantic Center, 1201 West Peachtree Street, Suite 3500
Atlanta, Georgia 30309
Telephone (404) 872-7000
Facsimile (404) 888-7490

**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

-----------------------------------

JONTI-CRAFT, INC,

Plaintiff,

v.

ABC SCHOOL SUPPLY, INC.,

Defendant.

Case No. 01-CV-2353 RHK/JMM

**[PROPOSED] STIPULATED ORDER OF DISMISSAL**

The Court has reviewed the Stipulated Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii) executed by counsel for the parties, and the terms and conditions of the Settlement Agreement attached to this Order as Exhibit I and incorporated herein as if fully set forth in it.

Therefore, IT IS ORDERED that:

1. This matter is dismissed with prejudice;

2. The dismissal is expressly conditioned on the terms and conditions of the Settlement Agreement attached and incorporated in this Order;

3. The Court retains jurisdiction of this matter for the purposes of taking any action needed to enforce the terms of the attached Settlement Agreement, which is a part of this Order; and

4. Each party is to bear its own costs, as provided in the Settlement Agreement.

Dated: ___________________

______________________________
Richard H. Kyle, Judge
United States District Court

816661.1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

## NOTICE

The latest amendments to the federal rules of procedure, (Civil, Criminal, Appellate and Bankruptcy), went into effect on December 1, 2002. The new amendments and related committee notes can be found at www.uscourts.gov/rules/amendments0202.htm.

One change is particularly noteworthy. That is Rule 7.1 of the Federal Rules of Civil Procedure. This rule requires that corporations file a "disclosure statement" whenever they initially appear as a party in a federal court action. The Rule 7.1 Disclosure Statement must identify "any parent corporation and any publicly held corporation that owns 10% or more" of the stock of the corporate party filing the statement. The purpose of the disclosure statement is to help judges and magistrate judges identify potential conflicts of interest. (Similar disclosure statement requirements are prescribed by Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 12.4 of the Federal Rules of Criminal Procedure.)

Beginning December 1, 2002, a Rule 7.1 Disclosure Statement must be filed by every corporation when it first appears in a federal action, even if the corporation merely reports that there is no parent corporation or publicly held corporation that owns 10% or more of its stock. These Disclosure Statements must also be filed <u>retroactively</u>, for every corporation which is a party to an action pending in this District as of December 1, 2002. The retroactive Rule 7.1 statements must be filed immediately.

It also should be noted that there have been extensive stylistic changes, (as well as a few substantive changes), to the Federal Rules of Criminal Procedure. Attorneys who appear in federal criminal cases should review the amended version of the Rules.